## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **JOHNNY ANDREW MCGILL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:22-CV-00418-MTT-CHW** |
| | : | |
| **RIVERBEND CORRECTIONAL** | : | |
| **FACILITY,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Johnny Andrew McGill, an inmate presently housed in the Riverbend Correctional Facility ("Riverbend") has filed a proper and complete motion for leave to proceed *in forma pauperis* (ECF No. 5). For the following reasons, Plaintiff's motions to proceed *in forma pauperis* are **GRANTED**, but it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

### MOTIONS TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Because it appears Plaintiff is unable to pay the cost of commencing this action, his applications to proceed *in forma pauperis* (ECF Nos. 2, 5) are **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the

prisoner has sufficient assets, he must pay the filing fee in a lump sum.  If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.  Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).  In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee, at least based on the funds immediately available to him in his prison trust fund account. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to the facility where Plaintiff is incarcerated.  It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the

account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW

## I.    Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th

Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a

statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.  *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

The claims in Plaintiff's Complaint arise from his treatment at Riverbend. According to the Complaint, Plaintiff "began to use a 100% petroleum jelly product on [his] chapped lips that came from the Keefe Commissary Network" ("Keefe") in March of 2021.  Compl. 4, ECF No. 1.  After some time, however, Plaintiff "noticed that the product had burned the skin texture of [his] lips, and the coloration of [his] lips, had gotten extremely brighter."  *Id.*  In April of 2021, Plaintiff submitted three medical requests concerning his lips, but prison officials did not respond to his requests or provide him any medical attention.  Attach. 1 to Compl. 1, ECF No. 1-1.  As a result, Plaintiff "got frustrated, and stopped writing request[s]" for several months.  *Id.*

On September 6, 2021, Plaintiff submitted another medical request concerning his lips.  Attach. 1 to Compl. 1, ECF No. 1-1.  The next day, Defendant Coleman, the health services administrator at Riverbend, examined Plaintiff's lips and opined that Plaintiff had herpes.  *Id.*  Defendant Coleman did not provide Plaintiff with additional medical treatment, but he did advise Plaintiff that he would schedule him to see the doctor.  *Id.* Plaintiff contends Defendant Coleman never scheduled this appointment.  *Id.*

On September 20, 2021, Defendant Siska, a doctor at Riverbend, examined Plaintiff

for a "6 months health check up." Attach. 1 to Compl. 2, ECF No. 1-1. Plaintiff explained his interaction with Defendant Coleman, and Defendant Siska provided Plaintiff with "7 Vaseline gauze strip packs, and said he would research a better solution, and recall [Plaintiff] back to medical." *Id.* On September 21, 2021, Plaintiff filed a grievance against Defendant Coleman apparently concerning the lack of care between April and September. *Id.* at 1.

On October 26, 2021, Plaintiff saw Defendant Siska at the nurse desk and "reminded him that he never called [Plaintiff] back to medical about [his] lip burn." *Id.* Defendant Siska told Plaintiff that he would have to "leave and put in another medical request" and that "he couldn't treat [Plaintiff] because [Plaintiff] filed a grievance against Health Services Administrator, Charles Coleman." *Id.* at 1, 2. Plaintiff contends Defendant Siska never gave him any additional care for his lips. *Id.* at 2. Plaintiff filed a grievance against Defendant Siska on October 28, 2021. *Id.*

Plaintiff contends that Defendant Keefe sold him the "damaging product" and that Defendants Coleman and Siska failed to provide him adequate medical treatment for his lips. Attach. 1 to Compl. 3, ECF No. 1-1. Plaintiff also sues Riverbend itself as the employer of these Defendants. *Id.* As a result of these alleged constitutional violations, Plaintiff seeks monetary damages. *Id.*

### III.   Plaintiff's Claims

#### A.   Claims against Riverbend and Keefe Commissary Network

As an initial matter, Plaintiff's claims against the prison itself are subject to dismissal. Federal Rule of Civil Procedure 17(b) provides that the law of the state where

the court is located determines an entity's capacity to sue or be sued. Thus, Georgia law controls this issue. The Georgia Supreme Court has explained that there are only three classes of legal entities subject to suit: "'(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue.'" *Ga. Insurers Insolvency Pool v. Elbert Cnty.*, 368 S.E.2d 500, 502 (Ga. 1998) (quoting *Cravey v. SE Underwriters Ass'n*, 105 S.E.2d 497 (Ga. 1958)). Riverbend does not fall under any of these categories, and thus, is not an entity that may be sued under § 1983. *See id.*; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Brannon v. Thomas Cnty. Jail,* 280 F. App'x 930, 934 n. 1 (11th Cir. 2008) (per curiam); *Allen v. Brown,* No. CV 112–052, 2013 WL 1333175, at *3 (S.D. Ga. March 7, 2013) (noting that "federal courts in Georgia . . . have determined that jails and prisons are not legal entities subject to liability in § 1983 claims"). Plaintiff's claims against Riverbend should therefore be dismissed.

Plaintiff's claims that Keefe Commissary Network is somehow liable for providing him improper over-the-counter medication also fail. In order to state a viable § 1983 claim, a plaintiff must allege that the deprivation of his rights was caused by a person who was acting under color of state law. *Hale*, 50 F.3d at 1582. A private citizen "may be viewed as a state actor under § 1983 '[o]nly in rare circumstances.'" *Brown v. Lewis*, 361 F. App'x 51, 54 (11th Cir. 2010) (per curiam) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). The Eleventh Circuit uses three tests to determine whether a private citizen acts under color of state law for § 1983 purposes:

(1) the public function test, which asks whether the private actors were

performing functions "traditionally the exclusive prerogative of the state;" (2) the state compulsion test, which applies to situations where the government coerced or significantly encouraged the unconstitutional actions at issue; and (3) the nexus/joint action test, which applies where the state and the private party were joint participants in the common enterprise.

*Id.* at 54 (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)). "A private party may also be held liable under § 1983 when he conspires with state actors to violate the plaintiff's constitutional rights." *Id.*

Courts have concluded that vendors selling products to prisoners in a state prison system—including Keefe itself—do not act under color of state law using any of these tests. *See, e.g., Bomer v. Access Catalog Co.*, 75 F. App'x 382, 383-84 (6th Cir. 2003) ("As a vendor selling products to prisoners in the Michigan Department of Corrections, Access was not acting under the color of state law and was not liable to Bomer under 42 U.S.C. § 1983."); *Kyles v. Keefe Commissary Network*, No. 14-CV-11907, 2015 WL 1637466, at *6 (E.D. Mich. Apr. 13, 2015) (finding that Keefe could not be considered a state actor just "by merely supplying products to a department of corrections or selling products directly to prisoners"); *Smith v. Ozmint*, C.A. No. 9:07-3644-PMD-BM, 2009 WL 692828, at *2, 4 (D.S.C. Mar. 12, 2009) (corporation that supplied prison with toiletries and health care products that were distributed to inmates could not be considered a state actor for purposes of § 1983) *aff'd* 356 F. App'x 646 (4th Cir. 2009); *Plummer v. Valdez*, No. 3-06-CV-1119-B, 2006 WL 2713784, at *2 (N.D. Tex. Sept. 21, 2006) (finding that prison commissary was "a private company, not a state actor" when it sold products to inmates because conduct of commissary was not "'fairly attributable to the State'"). And even if Keefe could be considered a state actor, the facts alleged by Plaintiff show that at

8

most, Keefe negligently provided him with a product that caused his reaction.  Merely "negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property." *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993).  Plaintiff has therefore failed to state an actionable Eighth Amendment claim against Defendant Keefe, and all such claims should likewise be dismissed.

### B.  Deliberate Indifference Claims against Defendants Coleman and Siska

Plaintiff next alleges that Defendants Coleman and Siska deprived him of treatment for his lip injury.  These allegations could give rise to claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "In either case, 'the medical need must be one that, if left unattended,

poses a substantial risk of serious harm.'"  *Id.* (quoting *Farrow*, 320 F.3d at 1243).

In this case, Plaintiff has not provided a description of the injury to his lips sufficient to show that he had a serious medical need.  *See, e.g., Leonard v. Monroe Cnty Fla.*, 789 F. App'x 848, 851 (11th Cir. 2019) (per curiam) (holding that prisoner failed to allege facts sufficient to show that he had a serious medical need when he "alleged no facts about his medical condition or symptoms").  The only symptom Plaintiff complains about is "discoloration" to his lips.  Compl. 4, ECF No. 1.  This discoloration—even if "permanent and clearly visible and noticeable," as Plaintiff alleges—does not rise to the level of a serious medical need absent other supporting facts.  *See Mitchell v. Scott*, Case No. 17-cv-00245-NJR, 2017 WL 958603, at *3 (S.D. Ill. Mar. 13, 2017) (skin discoloration, standing alone, would likely be considered "merely a cosmetic issue" rather than an objectively serious medical condition, but inmate stated claim by describing additional worsening symptoms and "articulated reasons for believing that his condition is the result of an STD or ringworm infection"); *see also McBride v. Houston Cnty. Healthcare Auth.*, 658 F. App'x 991, 999 (11th Cir. 2016) (per curiam) (inmate had serious medical need where she developed "a headache and sore throat so painful that [she] had been unable to eat and drink for days and a serious rash resulting in the skin on [her] lips peeling off—along with her screaming for help"); *Brock v. Wright*, 315 F.3d 158, 163-64 (2d Cir. 2003) (inmate suffered from serious medical need where large, thick keloid scar on face caused issues that were not simply cosmetic, including chronic, substantial pain that interfered with eating and toothbrushing).  Plaintiff's vague and conclusory allegations about his lips are insufficient to show that he suffered a "serious medical need," and his deliberate

indifference claims should therefore be dismissed.  *See Leonard*, 789 F. App'x at 851.

C.  Retaliation Claims against Defendant Siska

Plaintiff also alleges that Defendant Siska told Plaintiff "that he couldn't treat [Plaintiff] because [Plaintiff] filed a grievance against Health Services Administrator Charles Coleman."  Attach. 1 to Compl. 2, ECF No. 1-1.  Plaintiff may thus be seeking to raise a retaliation claim against Defendant Siska.  "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  *Farrow*, 320 F.3d at 1248.  A prisoner may state a claim for retaliation by alleging that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action.  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff's allegations against Defendant Siska fail to rise to the level of a constitutional violation.  It is important to note the context of the exchange that forms the basis for Plaintiff's potential claim against Defendant Siska.  Plaintiff was not scheduled to see a medical provider at the time he confronted Defendant Siska; rather, Plaintiff was in medical quarantine for an unspecified reason and approached Defendant Siska at the nurses' station to ask why he had never called Plaintiff back to medical for follow-up.  Attach. 1 to Compl. 2, ECF No. 1-1.  While the Court must accept as true Plaintiff's allegations that Defendant Siska refused Plaintiff's request for treatment and stated that he could not treat him because he filed a grievance against Defendant Coleman, Plaintiff also acknowledges that Defendant Siska told him that Plaintiff would simply have to "put in

11

another medical request" in order to obtain treatment. *Id.* at 1.  Thus, the cause of Defendant Siska's refusal to treat Plaintiff at that particular moment appears to have been Plaintiff's failure to follow the proper protocol, not the fact that Plaintiff had a grievance pending against Defendant Coleman.

Moreover, even assuming Plaintiff could prevail on the "causal connection" element of his retaliation claim, he has not alleged facts sufficient to show that Plaintiff suffered an "adverse action."[1]  As noted above, an "adverse action" is one likely to "deter a person of ordinary firmness from engaging in such speech."  *Smith*, 532 F.3d at 1276.  Defendant Siska's alleged refusal to treat Plaintiff—while Plaintiff was quarantined for another reason, without an appointment, and without a pending medical request as required by prison policy—cannot be considered an adverse action.  *See Dugan v. Jarvis*, 725 F. App'x 813, 816 (11th Cir. 2018) (per curiam) (noting that responses to grievances that "were filed in accordance with established procedures for handling administrative complaints and which were consistent with prison policy" could not be considered "likely to deter a person of ordinary firmness from filing additional grievances"); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (per curiam) (prison official who rejected prisoner's written request to be seen by the doctor with a note instructing prisoner "to wait

---

[1] While it is somewhat concerning that Plaintiff has alleged that he submitted three requests for medical treatment with no response, he has not alleged that Defendants Coleman or Siska ever received these requests or were otherwise subjectively aware of them. Moreover, Plaintiff was examined by Defendant Coleman the day after he submitted his September 6, 2021 request, and Plaintiff also alleges that he had six-month checkups with Defendant Siska.  It therefore appears that Plaintiff does have fairly regular opportunities to obtain medical treatment.

for a response to a grievance that [the prisoner] had earlier filed" could not "plausibly rise to the level of 'adverse action' because it would not be sufficient to deter a person of ordinary firmness from exercising his First Amendment rights").  Indeed, Plaintiff filed a grievance against Defendant Siska on October 28, 2021.  Attach. 1 to Compl. 2, ECF No. 1-1.  While the fact that Plaintiff was not deterred from filing a grievance against Defendant Siska is not dispositive of this issue given the objective nature of the inquiry, it does lend support to the conclusion that Defendant Siska's refusal to treat Plaintiff without a pending medical request did not constitute an adverse action.  *Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (per curiam) (holding that the continued filing of grievances against prison official "illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech").  Plaintiff has therefore failed to state an actionable retaliation claim against Defendant Siska, and any such claim must be dismissed without prejudice.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motions for leave to proceed *in forma pauperis* (ECF Nos. 2, 5) are **GRANTED**, but the undersigned finds that Plaintiff's Complaint, as pleaded, fails to state a claim upon which relief may be granted.  It is therefore **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

13

Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 16th day of February, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge